UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH ALBERTSON                          Case No. 15-12160

                    Plaintiff,             Stephanie Dawkins Davis
v.                                         United States Magistrate Judge

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14,15)**

**I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

    A.    <u>Proceedings in this Court</u>

    On June 14, 2015, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Victoria A.

Roberts referred this matter to Magistrate Judge Michael Hluchaniuk for the

purpose of reviewing the Commissioner's decision denying plaintiff's claims for

disability insurance benefits and supplemental security income.  (Dkt. 4).  On

January 5, 2016, this matter was reassigned to the undersigned Magistrate Judge.

*See* Text-Only Order of reassignment dated 1/5/16.  On February 29, 2016, the

parties filed a notice of consent to this Magistrate Judge's authority, which was

1

signed by Judge Roberts.  (Dkt. 17, 18).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 15).

      B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims for a period of disability and disability insurance benefits on October 27, 2011, alleging that he became disabled on April 28, 2008.  (Dkt. 12-2, Pg ID 50).  The claims were initially disapproved by the Commissioner on December 15, 2010.  *Id*.  Plaintiff requested a hearing and on September 25, 2013, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Michael R. Dunn, who considered the case *de novo*.  (Dkt. 12-2, Pg ID 66-95).  In a decision dated December 23, 2013, the ALJ found that plaintiff was not disabled.  (Dkt. 12-2, Pg ID 47-61).  Plaintiff requested a review of this decision on February 26, 2014.  (Dkt. 12-2, Pg ID 42).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on April 14, 2015, denied plaintiff's request for review.  (Dkt. 12-2, Pg ID 36-41); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

      C.    <u>ALJ Findings</u>

Plaintiff was 43 years old at the time of the hearing and 37 years old on the alleged disability onset date.  (Dkt. 12-2, Pg ID 52).  Plaintiff had past relevant work as a cleaner, fast food cook, and fast food manager.  *Id*.  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff

had not engaged in substantial gainful activity since the alleged onset date. *Id*. At step two, the ALJ found that plaintiff's degenerative disc disease of the thoracic and lumbar spine, diabetes mellitus, obesity, loss of vision in the left eye, and obstructive sleep apnea were "severe" within the meaning of the second sequential step. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. at 54.

The ALJ determined that plaintiff had the following residual functional capacity ("RFC")

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as otherwise stated in this paragraph. The claimant can lift and carry 20 pounds occasionally and ten pounds frequently. The claimant can push and pull within the same weight restrictions. In an eight-hour work day, with normal breaks, the claimant can sit for a total of six hours and he can stand/walk for a total of six hours. The claimant requires the option to alternate between sitting and standing every 30 minutes provided that in exercising this option, the claimant will not be off task more than 10% of the work period. The claimant can frequently balance and he cannot crouch or climb ladders or scaffolds. The claimant can occasionally perform each of the following postural activities: climbing ramps and stairs; stooping; kneeling; and crawling. The claimant can tolerate no exposure to unprotected heights. The claimant must avoid hazardous machinery and he cannot perform commercial driving. The claimant can read ordinary news and book print, but he cannot perform work requiring more than occasional reading or reading of small print.

3

*Id*. at 54-55.  At step four, the ALJ found that plaintiff was unable to perform his past relevant work, given his RFC.  *Id*. at 60.  At step five, the ALJ denied plaintiff benefits because he could perform a significant number of jobs available in the national economy.  *Id*. at 60-61.

For the reasons set forth below, plaintiff's motion for summary judgment is **DENIED**, defendant's motion for summary judgment is **GRANTED**, and the findings of the Commissioner are **AFFIRMED**.

## II.     ANALYSIS AND CONCLUSIONS

A.     Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

4

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing, *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.*

5

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).  The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.

7

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Learning Disorder</u>

Plaintiff argues that the ALJ never lists any functional limitations from plaintiff's severe cognitive impairments. According to plaintiff, the ALJ does not give any rationale for his decision, only conclusory statements. Plaintiff takes issue with the ALJ'S examination of the mental health evidence and the clear error

8

in finding plaintiff's learning disorder as nonsevere.  (Dkt. 12-2, Pg ID 52-53).  He

argues that the ALJ minimizes the evidence with little discussion citing that

plaintiff was a student who "worked hard."  *Id*.  The evaluation by the ALJ of the

"paragraph B" criteria is superficial and really does not evaluate anything.  *Id*.

Plaintiff asserts that there is "zero analysis" in evaluating the "paragraph B"

criteria.  *Id*.  Plaintiff respectfully disagrees with the ALJ's analysis.  It is well-

established that "once any one impairment is found to be severe, the ALJ must

consider both severe and nonsevere impairments in the subsequent steps," and it

becomes "legally irrelevant" that other impairments are not considered severe.

*McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 522 (6th Cir. 2008).

Here, plaintiff contends that there is no discussion or evaluation at the remaining

steps, because the ALJ superficially rejected plaintiff's impairment of learning

disability, and as a consequence did not analyze or discuss it during any further

step in the sequential process.

The Commissioner maintains that substantial evidence supports the ALJ's

finding that plaintiff's learning disorder was not severe at step two and asks the

Court to reject plaintiff's argument that the ALJ's analysis was "superficial" and

requires remand.  The Commissioner points out that plaintiff bears the burden of

showing that he is disabled within the meaning of the Act and this includes the

burden of establishing the existence of a severe medically determinable

9

impairment at step two.  *See* 20 C.F.R. § 404.1512(a).  According to the

Commissioner, the ALJ reasonably determined that plaintiff did not meet his

step-two burden based on the facts of this case.  The ALJ expressly reviewed the

evidence from 1989 related to plaintiff's learning disorder and found it did not

establish more than mild restrictions in plaintiff's ability to perform daily

activities, maintain concentration, persistence or pace, or function socially.  (Dkt.

12-2, Pg ID 53).  The ALJ also found that plaintiff had experienced no episodes of

decompensation on account of his learning disability.  *Id.*  In support of these

findings, the ALJ explained that, despite his learning disability,

> [t]he claimant remained in and graduated from a general
> education curriculum, but he qualified for one 55 minute
> period of special education assistance daily.  A
> psychological evaluation in the 12th grade showed the
> claimant to be reading at 12th grade level. Plaintiff was
> described as a good student who worked hard.  Nothing
> else in the claimant's voluminous records [ ] documents
> subjective complaints, observed signs or symptoms, or
> other significant problems related to the claimant's
> learning disability.

*Id.* (internal citations omitted)).  Thus, in essence, the ALJ found that plaintiff

provided no evidence that his learning disability in any way affected him during

the period at issue; the only records referring to this impairment date back to 1989.

(Dkt. 12-2, Pg ID 53).  Also, plaintiff's 1989 records did not show any significant

functional impairment since plaintiff was described as a good student, and

10

exhibited grade appropriate reading ability. (Dkt. 12-2, Pg ID 53 supported at Dkt. 12-7, Pg ID 283, 292).  Accordingly, the Commissioner says that the ALJ's analysis was not "superficial"; rather, there is no other relevant evidence that the ALJ failed to consider.  Notably, plaintiff – who bears the burden of establishing severity – did not allege any mental limitations in the documents he submitted to the Agency (*see* Dkt. 12-6, Pg ID 218), and does not point to any evidence that would support a finding that his learning disorder severely affected his ability to work.  Thus, the Commissioner maintains that there is no error.

The Court rejects plaintiff's argument of reversible error regarding the ALJ's Step 2 analysis.  As plaintiff acknowledges, the omission of an impairment from the step two findings does not typically warrant remand because the ALJ found that plaintiff had other impairments that met the criteria for severity at step two, and thus proceeded to step three in the sequential analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other "severe" limitation, the severity of Maziarz's cervical condition was irrelevant for the step two analysis).  If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe.  20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he

"must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). A step two omission is of "little consequence," provided that the ALJ considered "all impairments, severe and nonsevere," in crafting the RFC. *See Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003).

Plaintiff contends, however, that the ALJ's failure to find his cognitive impairment "severe" calls the entirety of the ALJ's evaluation into question. In the Court's view, however, plaintiff fails to show that his cognitive impairment was a severe impairment and even if it were a severe impairment, plaintiff does not explain how that cognitive impairment has worsened such that he was previously able to work in several occupations, but now that impairment is work preclusive. Rather, plaintiff makes a conclusory argument that the ALJ's analysis was lacking in any rationale. Yet, there is nothing in the treatment records suggesting that plaintiff's cognitive impairment "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). For these reasons, plaintiff's step two argument is rejected.

D.    Listing

Plaintiff next contends that the ALJ entirely ignored Step 3. According to plaintiff, "[t]here is no explanation, no reasoning, and no discussion whatsoever as to how the ALJ determined that listings were not met." Plaintiff contends that the

12

ALJ makes conclusory statements that he does not meet any listing, but never evaluates the objective medical evidence in making his decision.  According to plaintiff, the "lack of rationale and explanation is astounding considering the claimant's imaging results discussed previously and medical observations from both treating and consultative examiners."

Plaintiff's argument fails in that it  wholly ignores the extensive Step 3 analysis contained in the ALJ's decision.  As the Commissioner points out, the ALJ provided almost a full page of analysis at step three, where he considered several listings, including listings 1.04, 2.02, 2.03, 2.04, 3.02, 3.03 and 3.09, and stated why plaintiff's impairments did not satisfy the listings' criteria.  (Dkt. 12-2, Pg ID 54).  The ALJ also indicated that he considered plaintiff's obesity and diabetes, and found that these impairments did not "affect[ ] any bodily system to a degree meeting a listing." *Id*.  Then, to the extent plaintiff claims that a more detailed analysis of the record evidence was required, the ALJ did just that at the RFC stage, where he considered plaintiff's treatment notes, examinations, and objective tests.  (Dkt. 12-2, Pg ID 56-59).  Also, at the RFC stage, the ALJ relied on the opinion of Dr. McManus, a "highly qualified physician[ ]… who [is] also [an] expert[ ] in Social Security disability evaluation," 20 C.F.R. § 404.1527(e)(2)(i), who reviewed plaintiff's records and found that he retained the ability to perform a limited range of light work, not that his impairments met a

listing.  (Dkt. 12-3, Pg ID 104-108).  The Court agrees with the Commissioner that this alone is sufficient to support the ALJ's step three determination.  *See e.g.*, *Gower v. Comm'r of Soc. Sec.*, 2015 WL 163830, at *9 (E.D. Mich. Jan. 13, 2015) ("The Court agrees with the Magistrate Judge's conclusion that the ALJ's cursory discussion of Listing 1.04 does not require remand, since the ALJ's opinion as a whole demonstrates sufficient consideration of the relevant evidence. For instance… [t]he ALJ [ ] stated that she gave great weight to the opinion of Dr. Cole.  Dr. Cole opined that Plaintiff was not disabled, despite indicating that he considered Listing 1.04").

At Step 3 of the sequential analysis, plaintiff retains the burden of proving that she met or medically equaled a Listing.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  Here, plaintiff does not cite to any specific listing or explain how the evidence in the record satisfies a listing's criteria; instead, he only summarily states that "[t]he lack of rationale and explanation [by the ALJ] is astounding considering the claimant's imaging results… and medical observations from both treating and consultative examiners."  Pl. Br. at 17-18. The Court further agrees with the Commissioner that, absent a showing by the claimant that his impairments meet the specified listing criteria, he cannot establish actionable error, and the ALJ's decision should be affirmed.  *See Harvey v. Comm'r of Soc. Sec.*, 2014 WL 5465531, at *4 (E.D. Mich. Oct. 28, 2014)

14

("Although the ALJ did not explain his reasoning at Step Three, Harvey has not shown that she suffered prejudice as a result."); *Moran v. Comm'r of Soc. Sec.*, 2014 WL 4197366, at *26 (E.D. Mich. Aug. 22, 2014) ("ALJ's analysis does not need to be extensive if the claimant fails to produce evidence that she meets the Listing."). Plaintiff's Step 3 argument is, therefore, rejected.

      E.    <u>Residual Functional Capacity</u>

Plaintiff makes a host of arguments seemingly related to the RFC findings, including that plaintiff's treating physician opinions were not given controlling weight. According to plaintiff, there is no discussion of the objective medical evidence in the decision, no discussion of the factual basis for the decision, and not a single discussion in the decision of special factors such as medication side effects, fatigue, and pain that the plaintiff suffers. Plaintiff further asserts that the "ALJ rejects the treating physician medical opinion of Dr. Shuayto, MD, with the caveat of an unrecognizable standard beyond any that SSA recognizes." Specifically, the ALJ states that he gives the medical opinion "limited weight" due to the fact that the objective medical testing is not corroborative "of any injury or pathology which could be expected to give rise to such functional limitations." (Dkt. 12-2, Pg ID 59). Plaintiff asserts that it is unclear how objective medical testing could ever meet such a burden and upon what the ALJ relies for his analysis. Plaintiff points out that the objective medical testing reveals severe

15

injuries including positive straight test; limitation rotation of spine; MRI testing; and EMG testing results.  Thus, plaintiff asserts that the reasoning of the ALJ is "non-existent and flawed."  Plaintiff also claims that "the evidence was not evaluated nor weighed."  Dr. Shuayto opined that claimant would need to change positions more than once every two hours, could stand and/or walk 30 minutes, sit for 30 minutes, lift 10 pounds occasionally and 5 pounds frequently, and bend and stoop occasionally.  (Dkt. 12-9, Pg ID 791-792).  Plaintiff maintains that all of the restrictions by Dr. Shuayto would be reasonable considering the plaintiff's medical history, yet the ALJ makes no attempts to explain why those limitations would be unreasonable nor does he state any factual basis for rejecting Dr. Shuayto's medical opinion with regards to functional limitations.  According to plaintiff, the ALJ never evaluates Dr. Shuayto's medical opinion in context and never evaluates the medical opinion considering his specialty of Neurology and the objective medical testing, which includes: MRI of the thoracic spine revealed small disc protrusion at T4-T5, disc bulging at T5-T6, and central disc protrusion at T7-T8 (Dkt. 12-2, Pg ID 57); and MRI of the lumbar spine reveals disc herniation at L4-L5, disc herniation at L2-L3, and disc bulging at L1-L2 with mild anterior impression upon the thecal sac (Dkt. 12-9, Pg ID 788); Dr. Shuayto performed lumbar and thoracic injections (Dkt. 12-10, Pg ID 915, 923, 933).  Plaintiff also points out that the ALJ states that Dr. Shuayto's medical records

16

indicate the plaintiff has normal gait, stance, and strength, (Dkt. 12-2, Pg ID 59) but says this is misleading by the ALJ as the medical records consistently demonstrate positive bilateral straight leg testing and limited range of motions. (Dkt. 12-10, Pg ID 913-954).  According to plaintiff, the ALJ points to no substantial evidence in the record to dispute Dr. Shuayto's medical opinions.

Plaintiff also finds fault with the ALJ's reliance on the "non-examining MD" medical opinion, who was neither a treating physician nor an examining physician but was given controlling "significant weight."  (Dkt. 12-2, Pg ID 57). According to plaintiff, the ALJ never states who that physician is but notes that the opinion is "unbiased."  *Id*.  Plaintiff contends that a DDS examiner is a physician who was paid by SSA to deny claimant's claim for Social Security and could hardly be considered a neutral third party.  Plaintiff also asserts that the non-examining physician only reviewed a very small portion of the medical records that were available at the time he reviewed the file.  Yet, the ALJ "blindly" adopted the non-examining medical opinion to fit his RFC despite the clear medical evidence and dismisses all treating and examining physicians based on vague and irrelevant reasoning.

The Court agrees with the Commissioner's assertions that the ALJ reasonably evaluated the medical opinions, and other supporting evidence in the record.  In this case, the ALJ did not reject Dr. Shuayto's opinion.  Rather, the ALJ

17

assigned "limited weight" to Dr. Shuayto's opinion and "substantial weight" to Dr. McManus's assessment. (Dkt. 12-2, Pg ID 57, 59). He conducted a detailed review of the evidence (*see* Dkt. 12-2, Pg ID 55-60), finding that it was "reasonably consistent" with the opinion of Dr. McManus (Dkt. 12-2, Pg ID 57), but not entirely corroborative of Dr. Shuayto's opinion. (Dkt. 12-2, Pg ID 59). Concerning Dr. Shuayto's opinion, the ALJ found that it was "not corroborated by objective imaging, electrodiagnostic or clinical findings of any injury or pathology which could be expected to give rise to such functional limitations." (Dkt. 12-2, Pg ID 59). While plaintiff states that it is "unclear how objective medical testing could ever meet such a burden and what the ALJ relies [on] for his analysis," the Commissioner correctly points out that the ALJ found that the evidence did not support RFC restrictions as significant as Dr. Shuayto assessed. Indeed, the ALJ subsequently explained that,

> despite the claimant's frequent visits to his physicians' offices and to the hospital emergency room, there is very little objective imaging, laboratory or clinical evidence supporting the claimant's allegations. Imaging studies have revealed mostly mild problems. Physical examinations of the claimant have resulted in mostly normal findings concerning the claimant's gait, stance and strength. Much of the medical source statement provided by Dr. Shuayto finds no corroboration in Dr. Shuayto's abundant contemporaneous treatment records.

(Dkt. 12-2, Pg ID 59 (citations omitted)).

The Court agrees with the Commissioner that the record supports the ALJ's conclusion that plaintiff's objective medical testing was mostly unremarkable.  For example, the NCV examination that Dr. Shuayto ordered was essentially normal and did not reveal any problems associated with plaintiff's hands and arms.  (Dkt. 12-10, Pg ID 939).  Plaintiff's MRI examinations revealed disc herniations and protrusions, but no compromise of the spinal cord.  (Dkt. 12-9, Pg ID 787-788).  Also, Dr. Shuayto repeatedly observed on examination that plaintiff was in no distress, and retained normal gait, and intact strength and sensation throughout.  (Dkt. 12-10, Pg ID 919, 927-928).  While plaintiff notes that the doctor also observed some limitation in the range of motion of plaintiff's spine and positive straight leg raise findings, the Commissioner maintains that these findings alone are insufficient to justify limitations as significant as Dr. Shuayto assessed.  The Court agrees that the ALJ's decision in this regard is supported by the record because other doctors who have met with plaintiff have also identified largely unremarkable objective findings like no motor, sensory or reflex deficits, normal gait, full range of motion of all extremities, negative straight leg raise test results, and good range of motion and no weakness in the lumbar region.  (Dkt. 12-7, Pg ID 439; Dkt. 12-8, Pg ID 519).  Dr. McManus considered these latter findings in formulating his opinion (Dkt. 12-3, Pg ID 104 (considering plaintiff's "8/9/11-ER" visit)), and the ALJ reasonably found that they did not support the

19

degree of RFC restriction Dr. Shuayto assessed.

The ALJ's RFC is also supported by other evidence in the record.  For example, the ALJ found that plaintiff's reported activity level also supported his RFC finding. (Dkt. 12-2, Pg ID 59-60).  In the function report plaintiff completed for the Agency, he reported that he cared for his kids and pets, had no problems performing self-care activities, cooked, drove, and performed household chores like doing laundry, washing dishes, vacuuming, sweeping and raking the lawn. (Dkt. 12-6, Pg ID 214-217).  Apart from these activities, plaintiff's records also show that he shoveled snow, exercised with a Wii Fit that he purchased, and did "physical work" as part of a class he participated in.  (Dkt. 12-7, Pg ID 347; Dkt. 12-9, Pg ID 680, 694).  This evidence further supports the ALJ's decision to rely on the less restrictive assessment of Dr. McManus.

The Court concludes that the ALJ's weighing of the evidence to formulate the RFC is supported by substantial evidence.  As set forth above, even if there is substantial evidence to support an opposite conclusion, the Court may not reverse the Commissioner's decision unless it is unsupported by substantial evidence.  In this case, the Commissioner's administrative decision falls within the zone of choice outlined in *Felisky v. Brown*, *supra*.

Based on the foregoing, plaintiff's motion for summary judgment is **DENIED**, defendant's motion for summary judgment is **GRANTED**, and the

findings of the Commissioner are **AFFIRMED**.

   **IT IS SO ORDERED**.

Date: September 30, 2016            s/Stephanie Dawkins Davis
                                   Stephanie Dawkins Davis
                                   United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on <u>September 30, 2016</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                   s/Tammy Hallwood
                                   Case Manager
                                   (810) 341-7887
                                   tammy_hallwood@mied.uscourts.gov